| UNITED STATES BANKRUPTCY COURT | WESTERN DISTRICT OF WISCONSIN |
|---|---|

In Re:

121 LANGDON STREET GROUP, LLP,            Case No. 21-10886-cjf
                                                                               Chapter 11

          Debtor.

## DISCLOSURE STATEMENT DATED JULY 26, 2021

**I. INTRODUCTION**

The above-named Debtor, as Debtor-in-Possession submits this Disclosure Statement pursuant to 11 U.S.C. §1125.

121 Langdon Street Group, LLP (the "Debtor") provides this Disclosure Statement to all of its known creditors in order to disclose the information Debtor deems material, important and necessary for its creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance of a Plan of Reorganization ("The Plan" presently on file with the Bankruptcy Court).

Once the Court has approved the Debtor's Disclosure Statement, all creditors will be sent a copy of the Order approving the Disclosure Statement, the approved Disclosure Statement, the Plan, and a ballot to be completed by the creditor. Creditors will also be provided notice of the hearing on confirmation of the Plan and may attend such hearing. As a creditor, your acceptance of the Plan is important. In order for the Plan to be accepted, creditors voting, which hold at least two-thirds in amount and more than one-half in number of the allowed claims of the various classes, must vote for the Plan and holders of two-thirds in amount of equity security interest, in each class voting on the Plan, must vote for the Plan. In the event the requisite acceptances are not obtained, the Court may, nevertheless, confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class rejecting it.

NO REPRESENTATIONS CONCERNING DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR VALUE OF PROPERTY) IS AUTHORIZED BY DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN, OTHER THAN AS CONTAINED IN THIS STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION TO ACCEPT OR REJECT THEIR PLAN, AND ANY SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR TO WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS THE COURT DEEMS APPROPRIATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE DATA IN DEBTOR'S POSSESSION IS BASED UPON THE CURRENT RECORDS OF DEBTOR AS OF THE DATE OF THIS DISCLOSURE STATEMENT, UNLESS OTHERWISE STATED. THIS DATA IS BASED ON THE RECORDS KEPT BY DEBTOR AND IS TRUE AND ACCURATE TO THE BEST OF DEBTOR'S KNOWLEDGE. HOWEVER, DEBTOR IN POSSESSION IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS FREE FROM ERROR, ALTHOUGH EFFORT HAS BEEN MADE TO MAKE SURE THAT THE INFORMATION FAIRLY REPRESENTS THE CURRENT POSITION OF DEBTOR.

## II. HISTORY OF DEBTOR AND EVENTS LEADING TO BANKRUPTCY FILING

General Background. The real estate located at 121 Langdon Street, Madison Wisconsin, was originally purchased by a group of persons who referred to themselves as 121 Langdon Street Group in November 1994. The building located at 121 Langdon Street has three (3) five-bedroom apartments and one (1) three-bedroom apartment for a total of 18 bedrooms with 7 full baths and 1 half bath. The 121 Langdon Street Group ("Group") began operating and leasing the apartments to college students in 1994. The building has been a Madison Historic Landmark since 1974. The Group organized as a Wisconsin limited liability partnership on April 13, 2007 (the "Debtor").

**The Debtor's Property and Operations.** The Debtor, namely through Mr. Harold Langhammer and an employee of Central Properties, negotiate the leases with tenants of 121 Langdon and accept all rents and other charges in accordance with the tenants' leases. The regular, physical maintenance of 121 Langdon is performed primarily by Debtor. Several years ago the Debtor made major exterior improvements to the real property to ensure its historical condition and its longevity.

121 Langdon is in excellent condition and has not required any major improvements during the pendency of the bankruptcy case. Moreover, no major improvements are anticipated by the Debtor, other than regular maintenance, and roof replacement during the course of the lifetime of the building.

The Debtor rents primarily to college students and maintains a residential occupancy rate of about 99 percent. The Debtor makes a point of maintaining good communication with all of its tenants so that vacancies are minimized. In addition, it is usually able to re-rent vacant units quickly due to its location. Moreover, as units are vacated by prior tenants, Debtor raises rents to be paid by new tenants in order to further increase its cash flow.

In addition to renting the apartments mentioned above, the Debtor rents seven (7) parking spaces as additional income due to the location of the real property.

**Debtor's Bank Accounts.** During the pendency of the Chapter 11 bankruptcy case, the Debtor has operated the property and maintained Debtor-in-Possession ("DIP") bank accounts with Summit Credit Union for the following: 1) rental income and expenses associated with the rental property; 2) and for security deposits received from tenants. Debtor has submitted monthly operating reports as required. The Debtor's real estate tax escrow for 2021 real estate

taxes is currently being held at Krekeler Strother, S.C. Trust Account per the request of Debtor's secured lenders.

**Reasons for Filing Chapter 11.** 121 Langdon was subject to a foreclosure action filed by Todd Bramschreiber, Gwen Means, ME Elmore 1, LLC, and RL Elmore 1, LLC in Portage County Case No. 2018CV000298 (hereinafter "Lokre"), the junior mortgage holders on the 121 Langdon Street real estate property. 121 Langdon filed a Chapter 11 Case on January 17, 2020, as Bankruptcy Case No. 20-10125-11 and was represented by Attorney Timothy J. Peyton. The filing of this first Chapter 11 case ("First Case") stopped the Dane County Foreclosure Sale that was scheduled for January 21, 2020.

During this First Case, Debtor sought alternative financing which would have allowed it to pay Midland and Lokre in full. The Debtor, Midland and Lokre entered into a Stipulation on January 7, 2021 wherein Midland and Lokre consented to the dismissal of this case in exchange for payments and other conditions originally agreed upon in the first and second adequate protection agreements approved by this court. This Chapter 11 case was eventually dismissed on February 4, 2021 due to the expectation that refinancing from an entity known as TD Development Trust ("TD Trust") was eminent.

However, in February and March 2021, the Debtor continued to prepare for closings that TD Trust delayed. While relying upon the representations of TD Trust's agent, Debtor failed to make the agreed upon monthly payments to Midland and Lokre. In accordance with the stipulated agreement, in the event of Debtor's default, Midland and Lokre were immediately entitled to commence/continue its mortgage foreclosure proceeding without limitation.

The foreclosure sale was rescheduled for April 27, 2021. Prior to this sale, the Debtor tried to locate a different lender and issued a demand to TD Trust to complete the closing.

Debtor contacted and retained Krekeler Strother, S.C., to file the Chapter 11 Case No. 21-10886-11 on April 26, 2021. It was determined that it was in the best interest of the Debtor and its creditors that the Debtor continue to own and operate 121 Langdon.

## III. DEVELOPMENTS DURING THIS CASE

The Debtor's Chapter 11 bankruptcy case was filed on April 26, 2021, and the meeting of creditors for this case was concluded on June 10, 2021.

Since the bankruptcy case was filed, the Debtor entered into a Stipulation for Order Authorizing Use of Cash Collateral and Providing Adequate Protection with the first mortgage holder, Midland States Bank ("Midland") and with the second mortgage holder, Lokre. Debtor is making its interest-only payments to Midland in the amount of $5,009.54 and to Lokre in the amount of $1,965.57 commencing in accordance with that Stipulation. Moreover, Debtor is escrowing for 2021 real estate taxes in the amount of $3,159.00 per month by depositing this sum in the Trust Account of Debtor's counsel, Krekeler Strother, S.C.

The Debtor continues to manage 121 Langdon during the pendency of this case. Debtor foresees continuing to manage 121 Langdon and does not see any reason to hire a separate management company.

The current leases and/or executory contracts and parking agreements that the Debtor has with the current and future tenants of 121 Langdon shall be assumed by the Debtor ("tenant leases"). The Debtor is not in default on any of the terms and provisions of the tenant leases.

## IV. PLAN OF REORGANIZATION AND FEASIBILITY

The Debtor filed its proposed Chapter 11 Plan of Reorganization for consideration by its creditors. Debtor's Plan of Reorganization provides for payment in full of allowed secured, priority and general unsecured claims. All proposed payments under the Debtor's Plan of Reorganization shall be made monthly from the Debtor's continued management and rental of The Collegiate. The amortization of some of these obligations are proposed to be extended to provide for adequate cash flow and debt service. A copy of the Debtor's proposed Plan of Reorganization for creditors' consideration, provided as a summary pursuant to 11 U.S.C. Section 1125(b), is attached hereto as **Exhibit A.**

Attached as **Exhibit B** is the cash flow projection which was prepared internally by Debtor and its counsel. These projections were determined by reviewing the Debtor's historical revenues and expenses and the Debtor's current operations. The Debtor's cash flow projection averages the anticipated income taking into account when there are some vacancies, which are minimal; the Debtor rarely experiences a vacancy rate of more than one (1%) percent due to its location near downtown Madison and the UW-Madison campus.

So far, since the COVID-19 pandemic occurred, the Debtor's current tenants have continued to make their rent payments. However, the Debtor is currently evaluating the cost of rent guarantee insurance to cover any temporary rent losses.

## V. LIQUIDATION ANALYSIS

The Debtor estimates that liquidation of its assets in Chapter 7 would produce dividends for its unsecured creditors and, therefore, the Debtor's Plan of Reorganization proposes to pay its unsecured creditors in full. A copy of the liquidation analysis for the Debtor's assets is attached as **Exhibit C**.

## VI. TAX CONSEQUENCES

The Debtor does not believe there will be any material state or federal tax consequences as a result of the terms and provisions proposed in its Plan of Reorganization, since Debtor proposes to retain 121 Langdon property. However, if the Debtor was forced to liquidate its assets under a Chapter 7 case, the Debtor has determined there would be significant tax consequences which would substantially erode the amount that would be available for distribution to unsecured creditors.

## VII. RISK FACTORS

Certain substantial risk factors are inherent in most Chapter 11 Plans. In the event of a default, creditors would be able to enforce their claims fully. However, in the Debtor's case, other than a catastrophe that would destroy or significantly damage 121 Langdon, Debtor expects little to no risk to continue its operations. As discussed above, due to its location, it has few vacancies annually.

## VIII. CONCLUSION

All of the information contained in this Disclosure Statement represents the best efforts of the Debtor to provide relevant and necessary information to its creditors. This Statement represents the best estimates of Debtor regarding its assets and liabilities, and its current income and expenses and its projections for its ability to cash-flow its Plan of Reorganization in the future. This Disclosure Statement should be read and reviewed in conjunction with the Debtor's Plan of Reorganization.

Dated July __26__, 2021.

**KREKELER STROTHER, S.C.**

By: _/s/ Kristin J. Sederholm_
Kristin J. Sederholm
State Bar No. 1001895
Attorneys for Debtor,
121 Langdon Street Group, LLP

**ADDRESS:**
2901 West Beltline Highway, Suite 301
Madison, WI 53713
(608) 258-8555
ksederho@ks-lawfirm.com

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

In re:

121 LANGDON STREET GROUP, LLP,            Case No. 21-10886-cjf
                                          Chapter 11
          Debtor.

## CHAPTER 11 PLAN OF REORGANIZATION FOR
## 121 LANGDON STREET GROUP, LLP, DATED JULY 26, 2021

121 Langdon Street Group, LLP, the Debtor, as debtor-in-possession herein (the "Debtor"), pursuant to 11 U.S.C. § 1121, hereby sets forth the following as its proposed plan of reorganization dated June 18, 2021 (the "Plan"):

## ARTICLE 1
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set for the below:

1.1. "Administrative claim" shall mean a claim for administrative expenses under Section 503(b) of the United States Bankruptcy Code that is an Allowed Claim and is entitled to priority in payment pursuant to Section 507(a)(1) of the United States Bankruptcy Code.

1.2. "Allowed claim" shall mean any Claim, proof of which is filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and in either case, a Claim as to which n objection to the allowance thereof has been filed within the applicable period of limitation fixed by the Code, the Bankruptcy Rules, or an order of the Court, or (b) as to which any objection has been determined by an order or judgment of the Court allowing such Claim in whole or in part that is no longer subject to appeal, de novo review, or certiorari proceeding, and as to which no appeal, de no review, or certiorari proceeding is pending.

1.4. "Bar Date" shall mean June 15, 2021.

1.5. "Midland States Bank", (hereinafter Midland), one of the Debtor's pre-petition secured lenders, with first lien on Debtor's real property.

1.6. "Lokre Development Debtor", (hereinafter Lokre) as agent for Todd Bramschreiber, Gwen Means, ME Elmore 1, LLC, and RL Elmore 1, LLC, one of the Debtor's pre-petition secured lenders, with a second lien on Debtor's real property.


EXHIBIT A

1.7. "Avoidance Actions" shall mean any claims or causes of action of the Debtor's estate under or pursuant to Code sections 544, 545, 546, 547, 548, 549, 550, 551, or 553.

1.7. "Causes of Action" shall mean, whenever arising, all rights, claims, and causes of action accruing to the Debtor or the Trustee, before, on, or after the Petition Date, and not otherwise settled or compromised pursuant to this Plan or otherwise, including, without limitation, all Avoidance Actions.

1.8. "Claim" shall mean any right in existence on the Confirmation Date against the Debtor to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (b) an equitable remedy for a breach of performance if the breach would rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.9. "Code" shall mean the Bankruptcy Code, 11 U.S.C. § 101 et seq., and any amendments thereof.

1.10. "Confirmation Date" shall mean the date upon which the order confirming the Plan is entered by the court in accordance with the provisions of Chapter 11 of the Code.

1.11. "Confirmation Order" shall mean the order of the Court confirming the Plan.

1.12. "Court" shall mean the United States Bankruptcy Court for the Western District of Wisconsin in which the Debtor's Chapter 11 case, pursuant to which this Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

1.13. "Creditor" shall mean any person or its assignee that holds a claim against the Debtor for unsecured debts, liabilities, demands, or claims of any character whatsoever, including any under-secured creditors.

1.14. "Debtor" shall mean 121 Langdon Street Group, LLP, the Debtor in this chapter 11 case.

1.15. "Effective Date" shall mean the day that is 14 days after the Confirmation Order is entered, provided that all conditions to effectiveness of the Plan are satisfied, or else the next business day after all conditions to effectiveness of the Plan are satisfied.

1.16. "General Unsecured Claim" shall mean an unsecured Claim without priority.

1.17. "IRS" shall mean the United States Treasury, Internal Revenue Service.

1.18. "Krekeler Strother, S.C." shall mean Krekeler Strother, S.C., counsel for the Debtor in this Chapter 11 Case.

1.19. "Petition Date" shall mean the date on which the Debtor filed a voluntary petition for relief commencing this Chapter 11 case, April 26, 2021.

1.20. "Plan" shall mean this Plan of Reorganization in its present form or as may hereafter be amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

1.21. "Priority Claim" shall mean a Claim entitled to priority under Section 507(a)(8) of the Code.

1.22. "Rule" and "Rules" shall mean the Federal Rules of Bankruptcy Procedure and the local bankruptcy rules as adopted by the Court.

1.23. "Secured Claim" shall mean a Claim arising on or before the Petition Date (or thereafter upon approval of the Court) that is secured by a valid lien on property in which the Debtor's estate has an interest which is not void or voidable under any state or federal law, including the provisions of the Code.

1.24. "Secured creditors" shall mean creditors who hold a lien, security interest, or other encumbrance which has been properly perfected, as required by law with respect to the property owned by the Debtor, prior to the filing of this case, or thereafter as authorized and ordered by the Court.

1.25. "WIDOR" shall mean the Wisconsin Department of Revenue.

1.26. "Reorganized Debtor" shall mean the Debtor after the Plan has been confirmed by the Confirmation Order and after the Effective Date.

Terms not defined in this Plan that are defined in the Code shall have the meanings stated in the Code.

## ARTICLE 2
## CLASSIFICATION OF CLAIMS AND INTERESTS

The claims and interests herein are hereby classified as follows:

2.1 **CLASS 1** – The costs and expenses of administration of the Debtor's Chapter 11 case, as defined in the Code, for which application shall be made, provided said costs and expenses are allowed, approved, and authorized to be paid by the Court. Such costs include all pre-confirmation fees payable under 28 U.S.C. § 1930, which either have been paid or shall be paid on the Effective Date of the Plan, and all post-confirmation fees as required by law.

2.2 **CLASS 2** - The secured claim of Midland States Bank.

2.3 **CLASS 3** - The secured claim of Lokre Development Debtor, as agent for Todd Bramschreiber, Gwen Means, ME Elmore 1, LLC, and RL Elmore 1, LLC.

2.4 **CLASS 4** – The secured claim of the Dane County, Wisconsin, Treasurer.

2.4 **CLASS 5** – Any priority unsecured claims.

2.5 **CLASS 6** – Any general non-priority, unsecured claims which have not been disputed by the Debtor.

2.6 **CLASS 6** – The equity interests of the Debtor, if any.

# ARTICLE 3
# TREATMENT OF CLAIMS AND INTERESTS

3.1 **CLASS 1 – Administrative Priority Claims (Impaired Class).** Holders of administrative expense claims include all costs and expenses of the administration of this chapter 11 case allowed under Section 503(b) of the Code and entitled to priority under Section 507(a)(1) of the Code. The Plan provides for payment in full of all allowed administrative expenses on the Effective Date, unless other treatment is specifically set forth herein.

The administrative expense claim of Krekeler Strother. Krekeler Strother agrees that its claims for attorneys' fees and expenses shall be paid in full over a term of two (2) years, with interest at the fixed rate of 3.00% per annum, with monthly payments of $687.70. The amount of such fees and expenses to be approved is estimated to be $16,504.00 (includes interest). Such payments, however, shall be made only upon approval by the Court of such administrative expense claims.

As of July 26, 2021, Krekeler Strother, S.C. has incurred unpaid fees and expenses for its services as counsel for the Debtor in the approximate amount of $11,763.00. Krekeler Strother is currently holding $62.00 in its trust account from the Debtor. If the Debtor deposits funds into Krekeler Strother's trust account, such funds shall remain property of the Debtor's bankruptcy estate, and Krekeler Strother shall continue to hold all funds in its trust account until this Court enters an order approving and authorizing payment to Krekeler Strother upon Krekeler Strother's filing of an application for compensation pursuant to the applicable Bankruptcy Code and Rules.

Fees to professionals will continue to accrue through confirmation. The Court will ultimately review and determine the allowability and amounts of all fees paid or to be paid to the professionals described above. All fees of professionals approved by the Court will be paid from the bankruptcy estate.

3.2 **CLASS 2 – Secured Claim of Midland States Bank (Impaired Class).** Midland States Bank holds a properly perfected first lien upon the Debtor's real property located at 121 Langdon Street, Madison, Wisconsin. Debtor is obligated to Midland States Bank pursuant to the following loan documents: 1) Promissory Note dated June 14, 2016, in the original amount of $1,256,250.00 secured by a Real Estate Mortgage dated June 14, 2016 and recorded with the Dane County Register of Deeds on June 15, 2016 as Document No. 5242422.

Midland States Bank's secured claim in the amount of $1,364,343.33 shall be paid in full with interest at the fixed rate of 4.42% per annum, amortized over thirty (30) years with a balloon payment due within seven (7) years after the Effective Date. Midland States Bank's claim shall be paid by the Debtor in monthly payments, the first payment to be made within 30 days of the Effective Date, in the amount of $6,848.23, and with each subsequent monthly payment to be made thereafter, until claim is paid in full.

3.3 **CLASS 3 - Secured Claim of of Lokre Development Debtor ("Lokre"), as agent for Todd Bramschreiber, Gwen Means, ME Elmore 1, LLC, and RL Elmore 1, LLC (Impaired Class).** Lokre holds a properly perfected second lien upon Debtor's real property

located at 121 Langdon Street, Madison, Wisconsin. Debtor is obligated to Lokre pursuant to the following loan documents: 1) Promissory Note dated June 17, 2016, in the original amount of $285,000.00 secured by a Real Estate Mortgage dated June 19, 2019 and recorded with the Dane County Register of Deeds on June 19, 2019 as Document No. 5334355.

Lokre's secured claim in the amount of $200,049.94, shall be paid in full with interest at the fixed rate of 4.75% per annum, amortized over twenty (20) years with a balloon payment due within seven (7) years after the Effective Date. Lokre's claim shall be paid by the Debtor in monthly payments, the first payment to be made within 30 days of the Effective Date, in the amount of $1,292.77, and with each subsequent monthly payment to be made thereafter, until claim is paid in full.

Upon the administrative expense claim of Krekeler Strother being paid in full as set forth above, the estimated monthly payments of $687.70 shall be applied to the monthly payment to be made to this claimant.

3.4 **CLASS 4 – Secured Claims of the Dane County Treasurer (Impaired Class).** The Dane County Treasurer is the holder of a secured claim for the 2019 Real Estate Taxes in the amount of $26,069.51 (amount figured through June 30, 2021) for unpaid property taxes on the Debtor's real property. The Treasurer's claim shall be paid in full with interest at the rate of 12% per annum, over a term of five (5) years from the Petition Date, in monthly payments of $579.90, with the first payment due thirty (30) days from the Effective Date, and each subsequent payment to be made on the 15th day of each month thereafter.

The Dane County Treasurer is the holder of a secured claim for the 2020 Real Estate Taxes in the amount of $36,242.05 (amount figured through July 31, 2021) for unpaid property taxes on the Debtor's property. The Treasurer's claim shall be paid in full with interest at the rate of 12% per annum over a term of five (5) years from the Petition Date, in monthly payments of $806.16, with the first payment due thirty (30) days from the Effective Date, and each subsequent payment to be made on the 15th day of each month thereafter.

The Debtor will escrow for all post-petition real estate taxes in the amount of $3,159.00 per month by depositing this sum in the Trust Account of Debtor's counsel, Krekeler Strother, S.C.

3.5 **CLASS 5 - All priority unsecured claims (Impaired Class).**

As for the Petition Date, the Debtor did not owe any obligations to any priority unsecured creditors such as the WIDOR or the IRS. Accordingly, this Plan does provide for any treatment of such claims. The Debtor reserves the right to amend this Plan accordingly to provide treatment for, or object to, any priority unsecured claims which may be filed after the filing of this Plan. As for the City of Madison priority claim, Debtor shall dispute that classification and, under this Plan, treat it as a general, unsecured claim.

3.6    **CLASS 6—All General Non-Priority, Unsecured Claims (Impaired Class).**

Class 6 consists of all allowed general non-priority unsecured claims which total $108,821.80, according to claims scheduled as undisputed, non-contingent, and liquidated or filed proofs of claim. According to the Debtor's Liquidation Analysis, general unsecured claimants shall be paid in full, with interest at the fixed rate of 3.0% per annum, amortized over ten (10) years in equal month payments of $1,050.79 with a balloon payment due within seven (7) years from the Effective Date. These claimants shall share a pro rata monthly distribution from this sum with the first payment to be paid within 30 days of the Effective Date of this Plan, and then paid on the 15th day of each month thereafter.

3.7    **CLASS 7** – Equity Holders of the Debtor. The Debtor's equity holders shall retain their ownership interest upon confirmation of this Plan.

## ARTICLE 4
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1    Any and all executory contracts or unexpired leases to which the Debtor was a party as of the Petition Date shall be deemed rejected as of the Effective Date, *except* with respect to the following parties:

   4.1.1. Residential Leases. The Confirmation Order shall authorize and approve the Debtor's assumption of all current residential leases with its tenants at 121 Langdon Street, Madison, Wisconsin.

   4.1.2 Parking Lot Leases. The Confirmation Order shall authorize and approve the Debtor's assumption of all current parking lot leases with its tenants at 121 Langdon Street, Madison, Wisconsin.

## ARTICLE 5
## IMPLEMENTATION OF THE PLAN

5.1    To effectuate the proposed Plan, the Debtor shall continue its operation in the residential rental business and parking lot rental business. The Debtor will utilize profits, revenues, income from operations, and cash on hand on the Effective Date.

5.2    Except as may be expressly provided in this Plan, on the Effective Date, all assets of the Debtor's Bankruptcy Estate shall vest in the Reorganized Debtor. The Reorganized Debtor reserves the right to sell or transfer any of its property, with the proceeds to be distributed to lien holders according to their priorities.

5.3    Upon the Effective Date of the Plan, creditors shall have 14 business days to satisfy all outstanding judgment liens, and dismiss all pending suits, except as particularly set forth herein.

5.4    Interest on all allowed secured claims shall commence upon the Effective Date of the Plan.

5.5     Unless otherwise expressly set forth herein, payments to creditors under the Plan shall commence within 30 days from the Effective Date of this Plan.

5.6     The Reorganized Debtor may prepay any amount to any Class at any time without penalty.

5.7     No distributions of under $5.00 shall be made by the Reorganized Debtor, and no payments shall be made on claims under that amount. Any distribution checks which have not been negotiated and cleared six months after their distribution may be cancelled by the Reorganized Debtor without further liability for that distribution.

5.8     All distributions shall be mailed to creditors at the addresses shown on the Debtor's schedules, except those creditors who have filed Proofs of Claim or notices of appearance in this action shall have their distribution checks sent to the addresses shown on those documents. Any creditor may change the address for mailing of its distribution check by written notice to counsel for the Debtor. Any distribution checks properly sent to such addresses which are returned shall become the property of the Reorganized Debtor without further liability for such distributions.

5.9     Confirmation of this Plan shall not preclude or estop the Debtor from pursuing any claims of the estate, including any Avoidance Actions, nor any other claims against any of the Debtor's creditors for offset.

5.10    The Reorganized Debtor.  The Debtor shall emerge from Bankruptcy as the Reorganized Debtor, with all of the rights, powers, duties and obligations as set forth below.

> (a) <u>Vesting of all Property</u>.  Except as expressly provided in this Plan, on the Effective Date, all assets of the Debtor's Bankruptcy Estate shall vest in the Reorganized Debtor.
>
> (b) <u>Governance, Powers and Duties</u>.  On and after the Effective Date, the holders of the Interests in the Debtor shall be the managing partners of the Reorganized Debtor, and the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and the Court. The Reorganized Debtor shall also have the powers, duties, and obligations set forth in this Plan. On and after the Effective Date, all actions required of the Debtor shall be taken by the Reorganized Debtor, or its designee, in the name of and on behalf of the Debtor and its bankruptcy estate. The Reorganized Debtor shall be authorized to execute documents on behalf of the Debtor and its bankruptcy estate. The duties, responsibilities and obligations of the Reorganized Debtor include, but are not limited to, all matters for which the Court is retaining jurisdiction, including the following:
>
> > - making Distributions under the Plan;

- preparation and filing of tax returns, on behalf of the Debtor, its bankruptcy estate, including the right to request a determination of tax liability as set forth in Section 505 of the Bankruptcy Code;

- requesting and receiving of W-9 federal tax forms for any party who is entitled to receive a distribution on account of a Claim or Interest;

- prosecution and resolution of Causes of Action, if any, including any Avoidance Actions;

- Claims objections and reconciliation;

- payment of any post-confirmation fees due to the Office of the United States Trustee; and

- the compromise and settlement of Claims, Causes of Action, and other proceedings and matters.

(c) <u>Attorney Client Privilege to Extend to Reorganized Debtor</u>. The Reorganized Debtor shall stand in the same position as the Debtor with respect to any right the Debtor may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the Reorganized Debtor shall succeed to all of the Debtor's rights to preserve, assert or waive any such privilege.

(d) <u>Retention of Professionals</u>. The Reorganized Debtor may retain such attorneys, accountants, advisors, expert witnesses, and other professionals as it shall consider advisable without necessity of approval of the Court. Persons who served as professionals to the Debtor prior to the Effective Date may serve as professionals to the Reorganized Debtor. The fees and expenses of the Reorganized Debtor and professionals retained by it shall be paid in the ordinary course of business and without Court review or approval.

(e) <u>Causes of Action Retained and Preserved.</u> All causes of Action that are not otherwise compromised, settled, released or waived pursuant to the terms of this Plan shall be retained by the Reorganized Debtor and preserved. Except as otherwise expressly provided in the Plan, the Reorganized Debtor retains all rights, claims, defenses, setoffs, recoupment, and causes of action the Debtor or its estate may have against any third parties, and may pursue and/or enforce such retained rights, claims, defenses or causes of action in accordance with applicable non-bankruptcy law.

(f) Capital Gains Taxes. Any taxes payable on capital gains realized by the Debtor as a result of the disposition of certain assets under the Plan, or by any person or entity contributing assets to the Debtor under the Plan, shall be paid when and as they become due. The Debtor reserves the right to change the contemplated structure of the Reorganized Debtor, including the ability to

decline any assets that would be transferred to it under this Plan, in order to minimize the overall tax liability; provided, that such changes shall not relieve the Debtor from the obligation to treat Claims as provided in Articles 3.

## ARTICLE 6
## RETENTION OF JURISDICTION BY THE COURT

After the Confirmation Date, the Court may retain jurisdiction, and if the case is closed reopen it, for the following purposes, or as otherwise permitted by law:

6.1 **Objections to Claims.** To hear and determine any objections to the allowance of Claims, and requests for the estimation or liquidation of Claims.

6.2 **Fee Applications.** To hear and determine any and all applications for compensation of professional services and disbursements.

6.3 **Avoidance Actions.** To hear and determine any Avoidance Action or other proceedings to set aside (or preserve for the benefit of the Estate) or recover any property under applicable provisions of the Bankruptcy Code or other federal or state law.

6.4 **Recover Estate Assets.** To recover all assets of the Estate, wherever and however located.

6.5 **Pending Matters.** To hear and determine any pending applications, motions, adversary proceedings, and other contested matters not resolved by the Plan.

6.6 **Modification of Plan.** To modify the Plan to the extent permitted by the Plan and the applicable provisions of section 1127 of the Bankruptcy Code.

6.7 **Enforcement of Payments, Rights, and Interests.** To enforce the terms and provisions of payments, rights, and interests required or created by the Plan.

6.8 **Executory Contracts and Unexpired Leases.** To hear and determine all Claims or controversies arising from the assumption or the rejection of any executory contracts or unexpired leases and to consummate their assumption or the rejection.

## ARTICLE 7
## CLOSING AND REOPENING OF THE CASE

7.1 **Closing.** Upon substantial consummation of the Plan, the Debtor may apply for an order closing the case under section 350(a) of the Bankruptcy Code. The Plan shall be deemed to be substantially consummated after (a) the order confirming the Plan has become final; (b) the Debtor or the Reorganized Debtor has assumed the business of the management of the property

dealt with by the plan; (c) payments under the Plan have commenced, and (d) all motions, applications, contested matters, and adversary proceedings have been finally resolved.

7.2  **Reopening.** The case may be reopened pursuant to Bankruptcy Code § 350(b) to administer assets, to grant the Debtor other relief, to seek conversion or dismissal upon occurrence of a subsequent material default under the plan, to hear and resolve any matter or proceeding over which the Court has retained jurisdiction, or for other cause.

## ARTICLE 8
## OTHER REQUIRED PROVISIONS

8.1  Any payments made or to be made by the Debtor for services or for costs and expenses in connection with this case, or in connection with the Plan and incident to this case, have been approved by, or are subject to the approval of the Court, as reasonable.

8.2  All quarterly fees payable under 28 U.S.C. Section 1930 shall be paid on or before the effective date of the Plan, as required by 11 U.S.C. Section 1129(a)(12). The reorganized Debtor shall continue to file quarterly fee statements and pay quarterly fees when due until this case is converted, dismissed, or closed. The Bankruptcy Court shall retain jurisdiction necessary to enforce the provisions of this paragraph.

8.3  Confirmation of this Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under this Plan.

8.4  The Debtor has no retirement benefits which are required to be continued under 11 U.S.C. Section 1129(a)(13).

## ARTICLE 9
## CONCLUSION

The proposed Plan set forth herein reflects the Debtor's best efforts to reorganize in an orderly fashion. The Plan attempts to provide full payment to secured creditors and a substantially greater dividend to unsecured creditors than they are likely to receive if Debtor liquidates its assets.

[Space Intentionally Left Blank]

This Plan deals fairly and equitably with all of the creditors involved and approval of this Plan is in the best interests of the Debtor's creditors.

Dated: July 26, 2021.

**Krekeler Strother, S.C.**

By: /s/ Kristin Sederholm
Kristin J. Sederholm, State Bar No. 1001895
*Attorneys for the Debtor in Possession,*
*121 Langdon Street Group, LLP*

**Address:**
**2901 West Beltline Hwy, Suite 301**
**Madison, WI 53713**
**Phone: 608-258-8555**
**Fax: 608-258-8299**
**ksederho@ks-lawfirm.com**

121 Langdon Street Group LLP - Bankruptcy Case No. 21-10886-11
Cash Flow / Operations Budget (07.26.2021)

| **INCOME | July-21 | August-21 | September-21 | October-21 | November-21 | December-21 | January-22 | February-22 | March-22 | April-22 | May-22 | June-22 | July-22 | August-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 121 Langdon Apartment Rents (#LL -4 adults) | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 2,720.00 | $ 3,120.00 |
| 121 Langdon Apartment Rents (#2-4 Adults) | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,535.00 | $ 2,935.00 |
| 121 Langdon Apartment Rents (#3-5 Adults) | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 3,515.00 | $ 4,015.00 |
| 121 Langdon Apartment Rents (#1-6 Adults) | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 3,455.00 | $ 4,055.00 |
| Water Bill | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 |
| 121 Langdon Parking Rents | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 |
| TOTAL INCOME | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 13,560.00 | $ 15,460.00 |

| EXPENSES | July-21 | August-21 | September-21 | October-21 | November-21 | December-21 | January-22 | February-22 | March-22 | April-22 | May-22 | June-22 | July-22 | August-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MAINTENANCE: | | | | | | | | | | | | | | |
| Supplies | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 |
| Cleaning | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 |
| Snow Removal | | | | | | 500.00 | 500.00 | 500.00 | | | | | | |
| Fire Protection Testing | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 |
| Apt/Building Maintenance & Repairs | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 |
| Trash/Recycling Removal | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 |
| HVAC Maintenance and repair | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 |
| Carpet Cleaning | | 1,000.00 | | | | | | | | | | | | 1,000.00 |
| Apartment Turnover Labor | | 2,500.00 | | | | | | | | | | | | 2,500.00 |
| Water Softener Salt | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 |
| Insurance | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 |
| Real Estate Tax (Escrow for 2021) | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 |
| UTILITIES: | | | | | | | | | | | | | | |
| Water | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 |
| Gas & Electric | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 |
| TOTAL EXPENSES | $ 5,329.00 | $ 8,829.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,829.00 | $ 5,829.00 | $ 5,829.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 8,829.00 |
| OPERATING INCOME | $ 8,231.00 | $ 4,731.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 8,231.00 | $ 6,631.00 |
| MEMBER CONTRIBUTION | $ 3,035.00 | $ 6,535.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 3,035.00 | $ 4,535.00 |
| NET OPERATING INCOME (For Debt Service) | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,166.00 |

**Rental income for 2020-2021 was reduced by Debtor's management to maintain occupancy during the pandemic;
** Beginning August 2022, rental income will be increased by $100 per tenant



EXHIBIT B

# 121 Langdon Street Group LLP - Bankruptcy Case No. 21-10886-11
## Cash Flow / Operations Budget (07.26.2021)

| **INCOME | August-22 | September-22 | October-22 | November-22 | December-22 | January-23 | February-23 | March-23 | April-23 | May-23 | June-23 | July-23 | August-23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 121 Langdon Apartment Rents (#LL -4 adults) | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,120.00 | $ 3,520.00 |
| 121 Langdon Apartment Rents (#2-4 Adults) | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 2,935.00 | $ 3,335.00 |
| 121 Langdon Apartment Rents (#3-5 Adults) | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,015.00 | $ 4,515.00 |
| 121 Langdon Apartment Rents (#1-6 Adults) | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,055.00 | $ 4,655.00 |
| Water Bill | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 |
| 121 Langdon Parking Rents | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 | $ 1,050.00 |
| **TOTAL INCOME** | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 15,460.00 | $ 17,360.00 |

| EXPENSES | August-22 | September-22 | October-22 | November-22 | December-22 | January-23 | February-23 | March-23 | April-23 | May-23 | June-23 | July-23 | August-23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **MAINTENANCE:** | | | | | | | | | | | | | |
| Supplies | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 | $ 125.00 |
| Cleaning | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 |
| Snow Removal | | | | | | | | | | | | | |
| Fire Protection Testing | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 |
| Apt/Building Maintenance & Repairs | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 |
| Trash/Recycling Removal | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 | $ 275.00 |
| HVAC Maintenance and repair | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 |
| Carpet Cleaning | $ 1,000.00 | | | | | | | | | | | | $ 1,000.00 |
| Apartment Turnover Labor | $ 2,500.00 | | | | | | | | | | | | $ 2,500.00 |
| Water Softener Salt | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 |
| Insurance | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 | $ 385.00 |
| Real Estate Tax (Est Escrow for 2022) | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 | $ 3,159.00 |
| **UTILITIES:** | | | | | | | | | | | | | |
| Water | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 | $ 285.00 |
| Gas & Electric | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 | $ 130.00 |
| **TOTAL EXPENSES** | $ 8,829.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 5,329.00 | $ 8,829.00 |
| **OPERATING INCOME** | $ 6,631.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 10,131.00 | $ 8,531.00 |
| **MEMBER CONTRIBUTION** | $ 4,535.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 1,135.00 | $ 3,135.00 |
| **NET OPERATING INCOME (For Debt Service)** | $ 11,166.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,266.00 | $ 11,666.00 |

**Beginning August 2023, rental income will be increased by $100 per tenant

# 121 LANGDON STREET GROUP, LLP

## LIQUIDATION ANALYSIS (06.18.2021)

| | FMV | Secured party | Debt | | Wisconsin Exemption | Equity | |
|---|---|---|---|---|---|---|---|
| Apartment Complex at 121 Langdon Street, Madison WI 53703 | $ 1,820,000.00 | Dane Cty Treasurer (2019 RE Tax) | $ 26,069.51 | n/a | | | |
| Apartment Complex at 121 Langdon Street, Madison WI 53703 | " | Dane Cty Treasurer (2020 RE Tax) | $ 36,242.05 | n/a | | | |
| Apartment Complex at 121 Langdon Street, Madison WI 53703 | " | Midland States Bank (1st Mtg) | $ 1,364,343.33 | n/a | | | |
| Apartment Complex at 121 Langdon Street, Madison WI 53703 | " | Lokre Dev Company (2nd Mtg) | $ 200,049.04 | n/a | n/a | $ | 198,868.07 |
| Subtotal: | $ - | | $ 1,626,703.93 | | | $ | 198,868.07 |
| | | | | | | | |
| Cash | $ - | | | | n/a | | n/a |
| Summit Credit Union DIP Account | $ 2,085.00 | | | | n/a | | n/a |
| Krekeler Strother Trust Account | $ 62.00 | | | | n/a | | n/a |
| MGE Security Deposit | $ 425.00 | | | | n/a | | n/a |
| 4 Stoves; 4 refrigerators; 4 stacked washer/dryer units | $ 3,000.00 | | | | n/a | | n/a |
| | | | | | | $ | - |
| SUBTOTAL Assets: | $ 5,572.00 | | | | | $ | 198,868.07 |
| Real Estate | $ 1,820,000.00 | | | | | | |
| TOTAL: | $ 1,825,572.00 | | | | | $ | 198,868.07 |
| | | | | Less Priority/Admin. Claims/KS Fees | | $ | (25,000.00) |
| | | | | Less Trustee Fees = 25% of 1st $5,000 | | $ | (1,250.00) |
| | | | | 10% of next $45,000 | | $ | (4,500.00) |
| | | | | 5% of balance | | $ | (8,405.90) |
| | | | | | | $ | 159,712.17 |



EXHIBIT C